**COMMODITIES FUTURES TRADING COMMISSION, Plaintiff,**

v.

**RICHWELL INTERNATIONAL, LTD., a Hong Kong corporation, Richwell International Consultants (USA) Inc., a California corporation, Edmond Hon, Alan Suen, Anthony Chan, Defendants.**

No. C–93–3494 EFL.

United States District Court, N.D. California.

Jan. 14, 1994.

162

Eric S. Hill, Commodity Futures Trading Com'n, Los Angeles, CA, for plaintiff.

Dean M. Gloster, Farella, Braun & Martel, San Francisco, CA, for defendents.

### ORDER ADOPTING RECEIVER'S ASSET DISTRIBUTION PLAN

LYNCH, District Judge.

The Court heard the motion to adopt the receiver's asset distribution plan on December 10, 1993. The plan can be summarized as follows:

1. First, to pay *pro rata* out of both customer property and general property the expenses of administration of the receivership estate as approved by the Court.

2. Second, to distribute remaining customer property to existing "public customers" *pro rata* on the basis of the lesser of (a) current account balance on September 23, 1993, and (b) their total net deposits into their margin account.[1]

3. Third, to distribute the remaining general property to both past and present customers *pro rata* under a rescission and resti-

---

1. Public customers do not include those with "proprietary accounts" as defined in 17 CFR § 1.3(y) (i.e. insiders of the company and close relatives)

tution formula, paying them in proportion to their total lost money.

4. Fourth, to distribute remaining assets to customers with proprietary accounts in proportion to their claims against the receivership.

5. Lastly, in the event there are remaining assets, to distribute them to the general, non-customer creditors.

There are three sets of objections however to the receiver's plan. First, certain customers claim that they are entitled to a *pro rata* distribution based on the amount in their accounts as of September 23, 1993, with no limitation based on the total amount invested. This would entitle certain customers to a *pro rata* reimbursement which would include profits.

Second, Don Kobrin, a former employee of Richwell, has argued that certain customers funds were held in trust by him for those customers and therefore their accounts should not be included in the pool of customer property.

Third, the CFTC argues that the receivership property should be distributed *pro rata* to customers on a rescission and restitution basis. First, the CFTC claims, and the receiver agrees, that there is no evidence that the recorded trades were ever executed. Therefore, since the trading operation was illegal, the assets should be distributed on a rescission and restitution basis, just as "bucketed trades" would be distributed under the bankruptcy guidelines. In addition, the CFTC argues that rescission and restitution would be most equitable in spreading the losses amongst current and former customers. Finally, the CFTC claims that public policy concerns weigh in favor of not giving the operation any appearance of legitimacy by recognizing the current account balances as a basis for *pro rata* distribution. Moreover, because former customers are often those who report illegal trading operations, the CFTC asserts that treating all customers equally will encourage former customers to report illegal operations such as Richwell.

■ In defense of its plan and in response to these objections, the receiver argues, first, that it would not be equitable to allow current customers with profits showing in their accounts to collect more than their total investment. The Court agrees. This was an illegal operation. There is no indication, one way or the other, that the profits were anything other than paper profits. Moreover, had the CFTC not intervened it is likely that the current customers would soon be in the position of former customers who lost all or most of their investment.

■ Second, the receiver claims that there is no basis for the claim that certain accounts were held in trust for those newer customers. The receiver persuasively argues that to impose a constructive trust on specific assets for specific customers, at the expense of other similarly situated customers, would be inequitable. Though the Court is sympathetic to the fact that certain customers had quite recently made their investment, these people are no differently situated than customers who made their investment two months prior to September 23, 1993, and still show a positive account balance.

■ Finally, the receiver argues that the CFTC's plan, though perhaps sound as a matter of public policy, should not be adopted for a number of reasons. First, Richwell has detailed accounting records; it was not difficult to segregate the margin accounts of the customers. Second, although the contracts may have been "bucketed," there is not sufficient evidence to determine one way or the other whether these contracts were executed.

Therefore, the receiver argues it is more equitable to treat the accounts as established in fact and proceed under the scheme set forth in the Bankruptcy Code. The receiver believes, and the Court agrees, that under a complete rescission and restitution distribution plan litigation over whether the contracts were in fact "bucketed" could arise.

Lastly, the receiver argues that it is most equitable to track investor expectations. Under the receiver's plan, those who invested days before receivership commenced will not pay for past customers losses. This also reduces the likelihood of litigation over whether newer customers' funds were held in trust for them. The Court agrees. In es-

sence, those who are victims of theft or fraud expect to receive their property back if it is possible to actually identify what property is theirs. Moreover, those whose stolen property is no longer traceable feel fortunate to receive any compensation for their loss.

All parties at the December 10, 1993 hearing acknowledged that the Court has broad discretion to determine the appropriate method of distributing an equity receivership. Both the receiver and the CFTC believe that the Court should be guided by reference to the statutory scheme of the Bankruptcy Code for liquidation of commodity brokers and similar organizations. *See* 11 U.S.C. § 761 *et seq.* However, the receiver argues that his plan traces investor expectations, and therefore will result in a more equitable distribution.

For the above reasons, the Court adopts the receiver's plan of distribution of the receivership assets. Though the arguments on all sides had merit, ultimately the receiver's plan effects the most equitable compromise. It tracks investor expectations without legitimizing the trading operation by recognizing profits; it spreads the losses among customers with current account balances; and it distributes a substantial amount on the dollar to former customers who have already suffered the loss. The Court finds this plan most likely to reduce the likelihood of litigation while still equitably distributing the assets among current and former customers.

IT IS SO ORDERED.